

**SIGNED this 3rd day of April, 2020**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:                                            No. 4:19-bk-11439-SDR
                                                  Chapter 7
Robert Michael Thompson,

   Debtor;

Darlene Robinson, ACNPc and
Glite Healthcare Alliance, PLLC,

   Plaintiff;

v.

                                                  Adversary Proceeding
                                                  No. 4:19-ap-1035-SDR
Robert Michael Thompson,

   Defendant.

1

## MEMORANDUM

### I.    Introduction

On June 14, 2019, Darlene Robinson, ACNPc, and Elite Healthcare Alliance, PLLC, ("Ms. Robinson" or "the Plaintiff") filed a complaint in this adversary proceeding against Robert Michael Thompson, D.C., ("Dr. Thompson" "the Debtor," or "the Defendant") seeking a judgment from this Court that a debt in the amount of $2,587,123.29 is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). [Doc. No. 1].[1] The debt arises from a judgment Ms. Robinson obtained against Dr. Thompson on August 24, 2010, in the Chancery Court for Davidson County, Tennessee ("Chancery Court") for $1,200,000 in compensatory damages and $200,000 in punitive damages based on findings of breach of contract, fraud, intentional misrepresentation, and conversion. Ms. Robinson seeks a finding in this Court that the entire judgment plus post-judgment interest is nondischargeable.

On August 20, 2019, Dr. Thompson filed an answer while acting *pro se*. [Doc. No. 9]. After later obtaining counsel, Dr. Thompson filed an amended answer through counsel. [Doc. No. 29]. On March 9, 2020, Ms. Robinson filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, as incorporated into this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. [Doc. No. 38]. On March 19, 2020, Dr. Thompson through counsel filed a response in opposition to Ms. Robinson's motion for summary judgment. [Doc. No. 44]. Ms. Robinson filed a reply on March 26, 2020. [Doc. No. 45].

The parties' dispute arises out of the ownership and operation of a pain management and chiropractic clinic, Tennessee Wellness Centers, PLLC ("TWC"). The Chancery Court found that

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 1:19-ap-1035-SDR, unless otherwise noted.

Ms. Robinson, a nurse practitioner, and Dr. Thompson, a chiropractor, had formed a contract in which either: (1) they each "jointly own[ed] TWC and shared on a 50/50 basis, the net profits . . . plus their salaries and benefits"; or (2) Dr. Thompson solely owned TWC but he and Ms. Robinson had agreed to "share equally the net profits of TWC, plus their salaries and benefits." [Doc. No. 41-1, at 6]. The Chancery Court found, *inter alia*, that Dr. Thompson had "breached the parties' contract by failing to pay Ms. Robinson half of the net profits of TWC;" that he had "engaged in a pattern of fraud and misrepresentation in order to deprive" Ms. Robinson of her share; that Dr. Thompson had "converted funds of TWC" that would otherwise have benefitted Ms. Robinson to his personal use and benefit; and that "as a direct and proximate cause of [Dr. Thompson's] breach of contract, fraud, misrepresentation and conversion, Ms. Robinson suffered compensatory damages in the amount of $1,200,000." [*Id.* at 7-9]. The Chancery Court also found by clear and convincing evidence that punitive damages in the amount of $200,000 were warranted because Dr. Thompson had "acted intentionally, fraudulently and maliciously to induce Ms. Robinson to remain at TWC and to both build and manage a highly successful pain management practice based on an agreement that Ms. Robinson would share equally with Dr. Thompson the net profits of TWC, with no intent to follow through with that agreement." [*Id.* at 11].

Ms. Robinson now seeks a summary judgment finding that the Chancery Court's award of damages is nondischargeable in Dr. Thompson's bankruptcy case. Ms. Robinson argues that she is entitled to judgment as a matter of law because the doctrine of collateral estoppel prevents Dr. Thompson from relitigating the issues decided in the Chancery Court judgment. [Doc. No. 39, at 23]. Dr. Thompson does not object to the admittance of the Chancery Court's findings in this adversary proceeding. [Doc. No. 44-1, at 1-2, 8]. Rather, Dr. Thompson argues that the findings the Chancery Court made do not correspond to the elements of a nondischargeability claim under

sections 523(a)(2)(A), (a)(4), or (a)(6) and that, therefore, summary judgment is improper.

The Court has reviewed the motion for summary judgment, the pleadings and briefing filed by the parties, the record, and the applicable law. For the reasons explained below, the Court will GRANT in part and DENY in part Ms. Robinson's motion for summary judgment. The Court will GRANT the motion for summary judgment to the extent that it will enter an order finding that the debt owed to Ms. Robinson is nondischargeable under sections 523(a)(2)(A) and (a)(6). The Court will DENY the motion for summary judgment with respect to section 523(a)(4). Although Dr. Thompson has not moved for summary judgment, the Court will consider granting summary judgment for Dr. Thompson on the section 523(a)(4) claim. In accordance with Federal Rule of Civil Procedure 56(f), the Court will postpone the trial scheduled for April 20, 2020, and will give Ms. Robinson until April 24, 2020, in which to file a responsive brief if she wishes to proceed to trial on her section 523(a)(4) claim. If no response is filed, the Court will dismiss the section 523(a)(4) claim and close this adversary proceeding.

## II.    Jurisdiction

The Court has jurisdiction to hear and decide this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district. An action to determine the dischargeability of a particular debt is a core proceeding, and the parties have consented to entry of a final judgment by this Court. *See* 28 U.S.C. § 157(b)(2)(H).

## III.    Undisputed Facts

The following facts are taken from Ms. Robinson's statement of undisputed facts and attached exhibits, to which Dr. Thompson has stated he has no objection. [Doc. No. 41; Doc. No. 44-1, at 1, 2, 8]. The Court notes that Dr. Thompson intentionally did not file a response to Ms. Robinson's statement of undisputed facts, contending that there was no requirement for him to do

so found in Federal Rule of Civil Procedure 56. [Doc. No. 44-1, at 8]. Regardless, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Tennessee require a "response to the [summary judgment] movant's statement of undisputed material facts" and provide that "[a]bsent a response . . . the material facts set forth in the movant's statement will be deemed admitted." E.D. Tenn. LBR 7056-1(b). Accordingly, the facts set forth below are deemed admitted for purposes of summary judgment. *See Schulz Brau Brewing, LLC v. Evans (In re Evans)*, No. 3:16-bk-32647-SHB, Adv. No. 3:17-ap-3001-SHB, 2018 WL 1577716, at *1 (Bankr. E.D. Tenn. Mar. 28, 2018).

On November 25, 2009, Dr. Thompson filed a lawsuit against Ms. Robinson styled *Tennessee Wellness Centers, PLLC and Michael Thompson, DC v. Elite Healthcare Alliance, PLLC, Darlene Robinson, ACNPc and Larry McCoy, DC*, in the Chancery Court of Davidson County, Tennessee, Docket No. 09-2247-III. At the time Dr. Thompson filed suit, he was represented by counsel.

On February 19, 2010, Ms. Robinson filed her answer and counterclaim in the Chancery Court. On February 22, 2010, she filed and served an amended counterclaim against Dr. Thompson alleging claims of breach of contract, fraud, intentional misrepresentation, conversion and for an accounting. Dr. Thompson was required to file an answer within thirty days; however, no response was ever filed.

Dr. Thompson's attorney moved to withdraw from representation of Dr. Thompson on April 1, 2010. On April 20, 2010, Ms. Robinson filed a response to the motion to withdraw requesting that, upon the granting of the motion, the Chancery Court require Dr. Thompson to obtain substitute counsel within thirty days or be presumed to be proceeding *pro se*. By order entered May 24, 2010, the Chancery Court granted the motion to withdraw but required Dr.

Thompson to have new counsel file a notice of appearance by June 30, 2010, or else Dr. Thompson was to file a notice indicating that he would be proceeding *pro se*. The order granting withdrawal also provided that failure to comply with the deadline would result in Dr. Thompson's claims being dismissed without prejudice for failure to prosecute.

On May 28, 2010, Ms. Robinson filed a motion for default judgment, as to liability only, against Dr. Thompson regarding the claims in her counterclaim. Ms. Robinson gave notice to Dr. Thompson that the hearing on her motion for default judgment was set for June 11, 2010, and that Dr. Thompson's failure to appear or otherwise respond might result in the motion being granted without further notice. The Chancery Court held a default judgment hearing on June 11, 2010; however, Dr. Thompson did not appear nor file a response.

On June 29, 2010, Dr. Thompson filed *pro se* a "Petition to the Court for Additional Time" within which to obtain counsel and/or notify the Chancery Court that he was proceeding *pro se*. Ms. Robinson objected, but the Chancery Court extended Dr. Thompson's deadline to obtain counsel to September 3, 2010. The Chancery Court order indicated that noncompliance with the deadline would result in an automatic dismissal without prejudice of his complaint. Dr. Thompson failed to meet the September 3, 2010 deadline.

Following the hearing held on June 11, 2010, the Chancery Court entered a default judgment on July 6, 2010, against Dr. Thompson as to liability only and set a damages hearing for August 5, 2010. The Chancery Court's order provided notice to Dr. Thompson of the granting of the default judgment and of the evidentiary hearing set for August 5, 2010.

On August 5, 2010, the Chancery Court held an evidentiary hearing regarding Ms. Robinson's claim for damages. However, Dr. Thompson did not appear. At the evidentiary hearing, the Chancery Court nevertheless heard testimony and considered documentary evidence

regarding Ms. Robinson's claims for compensatory and punitive damages against Dr. Thompson. On August 24, 2010, the Chancery Court entered its Findings of Fact, Conclusions of Law and Order of Judgment in favor of Ms. Robinson ("Chancery Court judgment"). The Chancery Court ruled that Dr. Thompson engaged in intentional misrepresentation and fraud as to Ms. Robinson and cited specific instances of fraudulent misconduct. The Chancery Court judgment included over ten pages of findings of fact and conclusions of law, which are summarized below.

The Chancery Court found that the parties agreed to jointly and equally own and operate a combined pain management and chiropractic clinic, that both parties would devote their efforts to building and maintaining their respective practices, and that the parties would be paid the same salary and benefits and would split the net profits of the company equally between them. The Chancery Court found that Dr. Thompson made repeated false misrepresentations to Ms. Robinson that he would honor their agreement and that he would commit the agreement to writing. However, he never did so and in fact did not intend to do so each time he assured Ms. Robinson that their agreement would be committed to writing.

Despite acknowledging the terms of the parties' agreement on several occasions, both orally and in writing, Dr. Thompson failed and refused to share the net profits of the company with Ms. Robinson. Through numerous artifices of fraud, both oral and written, Dr. Thompson made himself the sole beneficiary of Ms. Robinson's hard work and her building of a very financially successful pain management clinic. Despite the parties' agreement, during a week that Ms. Robinson was away from the clinic undergoing surgery, Dr. Thompson formed TWC with himself as the sole member and proceeded to operate the business as his own. Dr. Thompson worked less and less to the extent that Ms. Robinson's pain management practice produced ninety-five percent of the company's net profits.

At one point, Ms. Robinson confronted Dr. Thompson and told him that unless he committed their agreement to writing and she received compensation she would move her practice and patients to another location. This would have resulted in termination of the business due to the fact that Ms. Robinson's pain management portion of the clinic generated practically all of the business' income. Dr. Thompson then suggested that they both consult with his attorney in order to commit their agreement to writing. During their meeting, Dr. Thompson's attorney falsely represented to Ms. Robinson that, as an acute care nurse, she was legally prohibited from having an ownership interest in TWC. The Chancery Court specifically found that this conduct "support[ed] Ms. Robinson's claim that Dr. Robinson intentionally engaged in fraud and misrepresentation in order to avoid the profit-sharing to which they had agreed, as well as to avoid their equal ownership in the business." [Doc. No. 41-1, at 4-5]. Further, the Chancery Court found that "Dr. Thompson employed the erroneous legal advice of his attorney in an effort to deceive Ms. Robinson into believing her partial ownership of TWC would be illegal and, having done so, began a pattern of conduct intended to keep Ms. Robinson at TWC for a fraction of the compensation to which they had originally agreed." [*Id.* at 11-12].

The Chancery Court found that Dr. Thompson had "engaged in a pattern of fraud and misrepresentation in order to deprive Ms. Robinson of her fifty percent . . . interest in the net profits of TWC and to continue to reap the benefits of her work and efforts. . . ." [*Id.* at 7]. The Chancery Court found that Dr. Thompson fraudulently withheld $1,200,000 in net profits from Ms. Robinson over the course of two years. [*Id.* at 9]. The Chancery Court found "clear and convincing evidence that Dr. Thompson . . . acted intentionally, fraudulently and maliciously to induce Ms. Robinson to remain at TWC and to both build and manage a highly successful pain management practice based on an agreement that Ms. Robinson would share equally with Dr. Thompson the net profits

of TWC, with no intent to follow through with that agreement." [*Id.* at 11]. The Chancery Court found that Dr. Thompson was "motivated solely by greed" and awarded $200,000 in punitive damages. [*Id.* at 11-12].

On September 27, 2010, the Chancery Court entered an order of dismissal referencing its earlier judgment in favor of Ms. Robinson on her counterclaim and Dr. Thompson's failure to meet the extended September 3, 2010 deadline to proceed with his original complaint. [Doc. No. 41-13]. The Chancery Court's order of dismissal further provided that it "shall operate as an Order of final disposition pursuant to Tenn. R. Civ. P. 58." [*Id.* at 2].

## IV.    Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to show conclusively that no genuine dispute of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient

showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Id.* at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The Court's role in deciding a motion for summary judgment "is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder." *Deutsche Bank Nat'l Trust Co. v. Birchfield*, No. 2:16-CV-19-TAV-MCLC, 2017 WL 3444694, at *2 (E.D. Tenn. Aug. 10, 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is not the Court's role at summary judgment to "weigh the evidence or determine the truth of the matter." *Id.* (citation omitted). Rather, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* (quoting *Anderson*, 477 U.S. at 250).

## V.    Analysis

### A. Preclusive Effect of Chancery Court Judgment

Ms. Robinson contends that the debt Dr. Thompson owes her due to the Chancery Court judgment is nondischargeable under section 523(a)(2)(A) because it arose out of fraud, under section 523(a)(4) because it arose out of fraud or defalcation while acting in a fiduciary capacity, and under section 523(a)(6) because it arose out of a willful and malicious injury. [Doc. No. 38, at 2-3]. She contends that she is entitled to summary judgment based on the preclusive effect of the factual findings made by the Chancery Court.

The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a).[2] *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (citing

---

[2] When considering the issue of dischargeability, collateral estoppel, or issue preclusion, differs from res judicata, or

*Grogan v. Garner,* 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). A party

may therefore be estopped from relitigating factual findings made by a state court in an action to

determine dischargeability if the requirements of collateral estoppel are met. *Georgia Dep't of*

*Human Servs. v. Oberg (In re Oberg)*, No. 1:14-bk-14496-SDR, Adv. No. 1:15-ap-1003-SDR,

2016 WL 5376186, at *4 (Bankr. E.D. Tenn. Sept. 26, 2016) (citing *Spilman v. Harley*, 656 F.2d

224, 228 (6th Cir. 1981)). The doctrine of collateral estoppel holds that, "[w]hen an issue of

ultimate fact has been determined by a valid judgment, that issue cannot be again litigated between

the same parties." *Rooney v. Hood (In re Hood)*, No. 3:17-bk-33605-SHB, Adv. No. 3:18-ap-3008-

SHB, 2019 WL 7580140, at *7 (Bankr. E.D. Tenn. Dec. 23, 2019) (quoting Black's Law

Dictionary 260 (6th ed. 1990) (other citations omitted). The doctrine "shield[s] litigants (and the

judicial system) from the burden of re-litigating identical issues and . . . avoid[s] inconsistent

results." *Id.* (citation omitted). "Collateral estoppel 'promotes finality, conserves judicial

resources, and prevents inconsistent decisions,' by barring 'the same parties or their privies from

relitigating in a later proceeding legal or factual issues that were actually raised and necessarily

---

claim preclusion. *See Rooney v. Hood (In re Hood)*, No. 3:17-bk-33605-SHB, Adv. No. 3:18-ap-3008-SHB, 2019 WL 7580140, at *7 (Bankr. E.D. Tenn. Dec. 23, 2019) ("[B]ecause federal courts have exclusive jurisdiction over actions to determine nondischargeability, pure res judicata (or claim preclusion) does not apply in § 523(a)(2), (a)(4), or (a)(6) proceedings even though 'the prior determination regarding the existence and amount of the debt will be entitled to preclusive effect.'") (quoting *Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236, 249 (Bankr. W.D. Mich. 2018)); s*ee also Brown v. Felsen*, 442 U.S. 127, 136-37 (1979). As the Sixth Circuit has explained,

> The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result [of] dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts.

*Spilman v. Harley*, 656 F.2d 224, 227-28 (6th Cir. 1981).

determined in an earlier proceeding.'" *Id.* (quoting *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016)).

Under the fundamental principle of full faith and credit, "judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The United States Supreme Court has clarified that whether an issue raised in a subsequent federal court proceeding is precluded by an earlier state court judgment must be determined by reviewing the law of the state that rendered the judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985). The Sixth Circuit has informed courts in this circuit that collateral estoppel will apply if: "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and (2) the issue was fully and fairly litigated in state court." *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 461 (6th Cir. 1999).

Accordingly, this Court must look to Tennessee law to determine if the findings made by the Chancery Court have preclusive effect in this nondischargeability action. Under Tennessee law, collateral estoppel "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding . . . [so] that [such] determination is conclusive against the parties in subsequent proceedings . . . ." *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009). The party asserting collateral estoppel bears the burden of proving the following:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding [and was necessary to the judgment], (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is

12

asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Long v. Piercy (In re Piercy)*, No. 3:18-ap-3043-SHB, 2019 WL 3943668, at *9 (Bankr. E.D. Tenn. Aug. 20, 2019) (quoting *Mullins*, 294 S.W.3d at 535).

As the Tennessee Supreme Court explained in *Mullins*:

When a party invokes the doctrine of collateral estoppel, the court must first identify the legal or factual issues that were decided in the earlier proceeding. Then the court must identify the issue or issues sought to be precluded in the later proceeding. Finally, the court must determine whether the issue or issues sought to be precluded in the later proceeding are the same as the issue or issues that were actually decided in the earlier proceeding. For the doctrine of collateral estoppel to apply, the issue or issues sought to be precluded in the later proceeding must be identical, not merely similar, to the issue or issues decided in the earlier proceeding.

*Mullins*, 294 S.W.3d at 536 (citing *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 787 (Tenn. Ct. App. 2007)).

In this case, the Chancery Court judgment is a final order and Dr. Thompson was a party to the prior proceeding, thus satisfying the third and fourth elements of collateral estoppel under Tennessee law. Based on Dr. Thompson's amended answer and brief in opposition to summary judgment, the Court ascertains no genuine dispute of fact with respect to the fifth element, requiring that he had a full and fair opportunity to contest the issues now sought to be precluded. The undisputed facts show that Dr. Thompson initiated the litigation that lead to the judgment against him, filed motions when represented by counsel and later as a *pro se* litigant, and received notice of both the default judgment hearing and the subsequent damages hearing. Although Dr. Thompson did not appear, the Chancery Court held a full evidentiary hearing on the issue of damages at which it accepted documentary evidence and heard testimony from witnesses. Based on these undisputed facts, the Court concludes that a Tennessee court would find that Dr. Thompson had a full and fair opportunity in the prior proceeding. *See, e.g., Couch v. Panther Petroleum, LLC (In re Couch)*, 704 F. App'x 569, 573-74 (6th Cir. 2017); *Anderson v. Fisher (In*

*re Anderson)*, 520 B.R. 89, 95 (B.A.P. 6th Cir. 2014). Consequently, the fifth element for the application of collateral estoppel is satisfied.

Dr. Thompson's brief in opposition to summary judgment argues only that the Chancery Court made insufficient findings upon which this Court could rely in making a finding of nondischargeability under sections 523(a)(2)(A), (a)(4), and (a)(6).[3] [Doc. No. 44-1, at 6-8]. In essence, Dr. Thompson contends that even if this Court were to accept the Chancery Court's findings in total, the elements of the state law torts comprising the judgment do not correspond with the elements required for nondischargeability under the applicable sections of the Bankruptcy Code. Although not stated as such, the Court interprets Dr. Thompson's arguments to apply to the first and second elements of collateral estoppel under Tennessee law. Accordingly, the Court will review these elements of collateral estoppel in light of the proof required to establish nondischargeability under the Bankruptcy Code.

## B. Section 523(a)(2)(A)

Ms. Robinson first argues that the debt owed to her by Dr. Thompson under the Chancery Court judgment is nondischargeable under section 523(a)(2)(A), which prohibits discharge of a debt based on "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ."[4] 11 U.S.C. § 523(a)(2)(A). The

---

[3] Dr. Thompson also contends that it is "significant" that the findings in the Chancery Court judgment were signed by Chancellor Ellen Hobbs Lyle but were prepared and submitted by Ms. Robinson's counsel. [Doc. No. 44-1, at 3]. Dr. Thompson argues, without citation to any legal authority, that the judgment consequently should be scrutinized under a "stricter analysis." [*Id.*]. The Court is not persuaded. The judgment is signed by Chancellor Lyle and was filed on the Chancery Court's docket as a final judgment. The judgment has the conclusive, final effect of law regardless of whether counsel may have drafted proposed findings for Chancellor Lyle's review. Moreover, the Court observes that the judgment contains a handwritten notation and an additional finding containing the initials of Chancellor Lyle further demonstrating that she closely reviewed and carefully considered the findings she made before signing and entering the judgment. The Court will apply the collateral estoppel standard applicable to final judgments in Tennessee. *See Mullins*, 294 S.W.3d at 534-35.

[4] In her motion for summary judgment and supporting brief, Ms. Robinson argues that the debt should also be found nondischargeable under section 523(a)(2)(B), which excepts from discharge a debt "to the extent obtained by . . . use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which

14

Sixth Circuit has held that to demonstrate nondischargeability under section 523(a)(2)(A), a creditor must prove four elements: (1) the debtor obtained money or property from or belonging to the creditor through false pretenses and/or material misrepresentations that at the time the debtor knew were false or that the debtor made with gross recklessness as to their truth or through actual fraud; (2) the debtor intended to deceive the creditor at the time the false pretenses, misrepresentations, or actual fraud occurred; (3) the creditor justifiably relied on the false pretenses, misrepresentation, or actual fraud; and (4) the creditor's reliance was the proximate cause of loss. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *see also Lansden v. Jones (In re Jones)*, 585 B.R. 465, 502 (Bankr. E.D. Tenn. 2018). Each element must be demonstrated by a preponderance of the evidence. *In re Jones*, 585 B.R. at 502.

An objection to dischargeability may be based on something broader than a specific statement by the debtor. In *In re Vitanovich* the Sixth Circuit Bankruptcy Appellate Panel addressed the meaning of "actual fraud" within the context of section 523(a)(2)(A):

> We adopt the position of the Court of Appeals for the Seventh Circuit that actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions. When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.

*Mellon Bank v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) (citing *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000)). Thus, "actual fraud" is broader than a misrepresentation and encompasses "any deceit, artifice, trick, or design involving direct and

---

the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B); [Doc. No. 38, at 2; Doc. No. 39, at 18]. However, Ms. Robinson's complaint did not seek nondischargeability under section 523(a)(2)(B). [*See* Doc. No. 1, at 5]. In the absence of a pleading seeking such relief, the Court will not grant Ms. Robinson summary judgment with respect to section 523(a)(2)(B).

active operation of the mind, used to circumvent and cheat another." *Id.* (quotation omitted). "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *Id.* (quoting *Gerad v. Cole (In re Cole),* 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)) (other quotation omitted). The United States Supreme Court has likewise clarified that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586-1587 194 L. Ed. 2d 655 (2016). A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained through review of the totality of the circumstances. *Rembert,* 141 F.3d at 281-82.

Dr. Thompson contends that the Chancery Court's findings are insufficient to support a finding of nondischargeability for false pretenses, misrepresentation, or fraud. [Doc. No. 44-1, at 6]. The Court disagrees. Initially, the Court notes that Ms. Robinson's countercomplaint, upon which the judgment was granted, specifically plead "fraud/misrepresentation" as a count along with the particular factual circumstances constituting the fraud. [Doc. No. 41-3, at 17]. Both the Federal Rules of Bankruptcy Procedure, which incorporate the Federal Rules of Civil Procedure into this adversary proceeding, as well as the Tennessee Rules of Civil Procedure, "require that all complaints averring fraud state with particularity the circumstances constituting the fraud, although the allegations concerning intent, knowledge, and the defendant's condition of mind may be stated generally." *See Gray v. Vinsant (In re Vinsant)*, 539 B.R. 351, 359 (Bankr. E.D. Tenn. 2015) (*comparing* Tenn. R. Civ. P. 9.02 *with* Fed. R. Civ. P. 9(b) (as incorporated in adversary proceedings by Fed. R. Bankr. P. 7009)).

Moreover, as our courts have previously observed, the elements for fraud or intentional misrepresentation under Tennessee law are "substantially similar" to those required to find a debt nondischargeable under section 523(a)(2)(A). *Id.* at 359 (citing *Diggs v. Lasalle Nat'l Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. 2012); s*ee also Schulz Brau Brewing, LLC v. Evans (In re Evans)*, No. 3:16-bk-32647-SHB, 2018 WL 1577716, at *4 (Bankr. E.D. Tenn. Mar. 28, 2018). To recover for fraud or intentional misrepresentation in Tennessee, a plaintiff must prove:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012); *see also Diggs*, 387 S.W.3d at 564.

The Chancery Court clearly found each of the elements required to support a claim for fraud or intentional misrepresentation under Tennessee law. These findings have preclusive effect in this proceeding and lead the Court to conclude that the debt should be nondischargeable under section 523(a)(2)(A). After setting forth its detailed factual findings regarding Dr. Thompson's misrepresentations and fraudulent conduct, the Chancery Court found that Dr. Thompson "conveyed to Ms. Robinson an intentional misrepresentation of a material fact, that he knew of the representation's falsity at the time he made it, that Ms. Robinson sustained injury as a result of reasonable reliance on said representation, and that Dr. Thompson's misrepresentations made to Ms. Robinson involved a past or existing fact, or a promise of future action with no present intent to perform." [Doc. No. 41-1, at 8]. The Chancery Court further found that Dr. Thompson's "breach of contract, fraud, misrepresentation and conversion" were a "direct and proximate cause" of the

compensatory damages and that his actions warranted the imposition of punitive damages. [*Id.* at 8-12].

In opposing summary judgment, Dr. Thompson argues that the Chancery Court's finding with respect to the element of reliance "seems insufficient" to sustain a claim for nondischargeability under section 523(a)(2)(A). [Doc. No. 44-1, at 6]. First, Dr. Thompson appears to argue that the Chancery Court's finding that Ms. Robinson sustained injury as a result of *reasonable* reliance on Dr. Thompson's misrepresentation should not have preclusive effect because the standard under section 523(a)(2)(A) is one of *justifiable* reliance. [*Id.*]. Second, Dr. Thompson argues that the Chancery Court's findings with respect to the element of reliance are "conclusory . . . with no foundation." [*Id.*].

The Court disagrees in both respects. First, the Chancery Court's legal conclusion that Ms. Robinson reasonably relied on Dr. Thompson's misrepresentation is legally sufficient to support a finding of justifiable reliance under section 523(a)(2)(A). "Reasonable reliance" is defined in terms of what a general, reasonable person would understand, whereas "justifiable reliance" is an "individual standard" relying on the particular circumstances of each case and under which "a person is justified in relying on a factual representation without conducting an investigation, so long as the falsity of the representation would not be patent upon cursory examination." *Field v. Mans*, 516 U.S. 59, 60, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). The difference between the two standards is that reasonable reliance is objective whereas justifiable reliance is subjective. *Wilhelm v. Finnegan (In re Finnegan)*, 428 B.R. 449, 455 (Bankr. N.D. Ohio 2010). To prove justifiable reliance, a creditor must demonstrate "that they actually relied on [a debtor's] representations and, based upon the facts and circumstances known to them at the time, that their reliance was

justifiable." *Jenkins v. Schmank (In re Schmank)*, 535 B.R. 243, 259 (Bankr. E.D. Tenn. 2015) (citation omitted).

Dr. Thompson is correct that the United States Supreme Court held in *Field v. Mans* that "justifiable reliance" is the applicable standard when evaluating that element of a section 523(a)(2)(A) claim. *See Field v. Mans*, 516 U.S. at 73-75. However, Dr. Thompson's argument ignores that reasonable reliance is the higher of the two standards. In *Field*, the Supreme Court specifically contrasted justifiable reliance with reasonable reliance, finding that justifiable reliance was the "less demanding" standard. *Id.* at 61, 71 (explaining difference between justifiable reliance and reasonable reliance under the common law, citing the Restatement (Second) of Torts); *see also Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763 n.6, 201 L. Ed. 2d 102 (2018) (noting that in contrast to the reasonable reliance standard a creditor is required to show under section 523(a)(2)(B)(iii), a creditor is only required to make "the lesser showing of 'justifiable reliance'" under section 523(a)(2)(A)); *Knoxville TVA Employees Credit Union v. Houghton (In re Houghton)*, No. 3:18-cv-27, 2018 WL 3381506, at *3 (E.D. Tenn. July 10, 2018) ("Justifiable reliance is a less demanding standard than reasonable reliance . . . ."). Thus, although in this case the Chancery Court found that Ms. Robinson proved the higher standard of reasonable reliance, the Court fails to see how this point helps Dr. Thompson's case.

The Court also disagrees with Dr. Thompson's argument that the Chancery's Court's findings with respect to reliance are conclusory. Dr. Thompson incorrectly contends that the Chancery Court made only one mention of reliance in its judgment. [Doc. No. 44-1, at 6]. In point of fact, the Chancery Court made three specific findings which use the word "reliance." [Doc. No. 41-1, at 3, ¶ 5; 6-7, ¶ 1; and 8, ¶ 6]. Notwithstanding, Dr. Thompson's argument relies on simply taking the Chancery Court's legal conclusion out of context as if that were the only finding the

19

Chancery Court made on the matter. Legal conclusions are by their nature conclusory. However, a review of the entire judgment shows that the Chancery Court also made several other specific factual findings and legal conclusions that speak to Ms. Robinson's reliance on Dr. Thompson's fraudulent conduct and intentional misrepresentations.

For example, the Chancery Court found that Dr. Thompson had agreed to pay Ms. Robinson an equal salary and "divide equally the net profits of the clinic" and had "at all times assured [her] that he would commit their agreement to a formal writing." [*Id.* at 3]. The Chancery Court found that "[b]ased on this verbal understanding, and in reasonable reliance thereon, Ms. Robinson continued to build her pain management practice, ultimately managing to build that practice into a very financially profitable business" that "became responsible for approximately ninety-five percent . . . of the income generated by the clinic." [*Id.*]. The Chancery Court found that Dr. Thompson created TWC with himself as the sole member while she was away from work for a week to undergo surgery and that he "proceeded to operate the . . . business as his own." [*Id.*]. Throughout 2008 and 2009, Dr. Thompson "continued . . . to assure Ms. Robinson that they were still 'partners' and that they would share the net profits of the business equally." [*Id.* at 4]. When Ms. Robinson confronted Dr. Thompson to reduce their agreement to writing, he suggested they both meet with his attorney, who falsely told Ms. Robinson that "as an acute nurse practitioner, [she] was legally prohibited from having an ownership interest in TWC." [*Id.*]. The Chancery Court found that "Dr. Thompson employed the erroneous legal advice of his attorney in an effort to deceive Ms. Robinson into believing her partial ownership of TWC would be illegal and, having done so, began a pattern of conduct intended to keep Ms. Robinson at TWC for a fraction of the compensation to which they had originally agreed." [*Id.* at 11-12].

Dr. Thompson offered to pay Ms. Robinson one percent of the net profits, which she refused to accept. The Chancery Court found that based on Dr. Thompson's representations, Ms. Robinson nevertheless "expected she would receive a generous hike in salary beginning in October [2009]" but her salary was never increased, causing her eventually to move her practice from TWC. [*Id.* at 5-6]. The Chancery Court found that Dr. Thompson had "engaged in a pattern of fraud and misrepresentation in order to deprive" Ms. Robinson of her share and that he had "maliciously . . . induce[d]" her to "remain at TWC and to both build and manage a highly successful pain management practice . . . with no intent to follow through with [their] agreement." [*Id.* at 7, 11]. These findings are sufficient for this Court to determine that Ms. Robinson actually relied on Dr. Thompson's misrepresentations and that based upon the facts and circumstances known to her at the time, her reliance was justifiable. *See In re Schmank*, 535 B.R. at 259.

Because Ms. Robinson's countercomplaint in the Chancery Court alleged facts sufficient to plead fraud and intentional misrepresentation under Tennessee law, the elements of which fit within the requirements of section 523(a)(2)(A), and the Chancery Court made specific findings of fact and conclusions of law that Dr. Thompson obtained money or property from Ms. Robinson through fraud and intentional misrepresentation of a material fact, that at the time he made the misrepresentation Dr. Thompson knew it to be false, that Ms. Robinson reasonably relied on the misrepresentation, and suffered loss as a proximate cause of such reliance, this Court does not need to redetermine those facts. Those findings have already been made, and the Court finds that the doctrine of collateral estoppel establishes that the debt owed by Dr. Thompson is nondischargeable under section 523(a)(2)(A). Ms. Robinson has met her burden to prove that there is no genuine dispute as to the material facts comprising the elements of a nondischargeable claim under section 523(a)(2)(A) and that she is entitled to judgment as a matter of law.

21

### C. Section 523(a)(4)

Ms. Robinson next contends that Dr. Thompson's debt arising from the Chancery Court judgment is nondischargeable under 11 U.S.C. § 523(a)(4). Dr. Thompson counters that the Chancery Court made insufficient findings with respect to whether an express trust relationship existed between Ms. Robinson and Dr. Thompson.

Section 523(a)(4) provides in relevant part that, "[a] discharge under section . . . 727 of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . ." 11 U.S.C. § 523(a)(4). The Court looks to federal common law to determine the meaning of the terms in section 523(a)(4). *Rice v. Morse (In re Morse)*, 524 B.R. 774, 793 (Bankr. E.D. Tenn. 2015) (citations omitted). Within the scope of section 523(a)(4) embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citation omitted). "Larceny is also the fraudulent misappropriation of funds; however, it differs from embezzlement because possession of the property was never lawful." *Long v. Piercy (In re Piercy),* No. 3:18-ap-3043-SHB, 2019 WL 3943668, at *7 (Bankr. E.D. Tenn. Aug. 20, 2019) (citing *First Nat'l Bank v. Simerlein (In re Simerlein)*, 497 B.R. 525, 537 (Bankr. E.D. Tenn. 2013)).

Finally, section 523(a)(4) provides that a debtor is not discharged from any debt for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). Fraud or defalcation while acting in a fiduciary capacity "encompasses both embezzlement and larceny, as well as the failure to properly account for any funds, but may only be the basis for a nondischargeable debt if the plaintiff proves '(1) a pre-existing fiduciary relationship; (2) breach of that relationship; and (3) resulting loss.'" *In re Piercy*, 2019 WL 3943668, at *7 (quoting *Patel v. Shamrock*

22

*Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009); *see also Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007)). In *Bucci*, Sixth Circuit found that "the defalcation provision applies to 'only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor.'" *In re Bucci*, 493 F.3d 635, 639-40 (6th Cir. 2007) (quoting *In re Garver*, 116 F.3d 176, 180 (6th Cir. 1997).

The Sixth Circuit has also cautioned that "the term 'fiduciary capacity' is narrower here than it is in some other contexts: section 523(a)(4) covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" *In re Patel*, 565 F.3d at 968 (quoting *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S. Ct. 151, 79 L. Ed. 393 (1934)). "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong and without reference thereto." *Com. of Ky. ex rel. Gorman v. Kinnard*, 1 F.3d 1240 (Table), 1993 WL 300425, at *2 (6th Cir. 1993) (citation omitted). In order to demonstrate the existence of an express or technical trust, a creditor must prove that there was: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Bucci*, 493 F.3d 635, 640 (internal quotation omitted).

In this case, Ms. Robinson's argument on summary judgment focuses on whether the Chancery Court's findings established fraud or defalcation while acting in a fiduciary capacity.[5] Dr. Thompson contends that the Chancery Court's findings do not establish the existence of an

---

[5] Aside from quoting the statute, Ms. Robinson makes no separate argument in her brief or reply brief with respect to the embezzlement or larceny prongs of section 523(a)(4). [Doc. No. 39, at 21-22; Doc. No. 45, at 8-9]. The Court, therefore, will treat those issues as being waived for purposes of summary judgment.

"express or technical trust relationship arising from the placement of a specific res in the hands of the debtor." [Doc. No. 44-1, at 6].

With respect to fraud or defalcation while acting in a fiduciary capacity, the Court agrees with Dr. Thompson. The Chancery Court's findings fall short of establishing the requisite express or technical trust relationship. The Chancery Court made no findings from which this Court could identify an intent to create a trust, a trustee, a trust res, or a definite beneficiary all of which must have arisen prior to Dr. Thompson's wrongdoing. In her reply brief, Ms. Robinson appears to acknowledge that the Chancery Court made no such findings. [Doc. No. 45, at 9]. Rather, Ms. Robinson argues that Dr. Thompson breached his common law and state law statutory duties of loyalty and fiduciary duty to his partner. However, the Sixth Circuit has adopted a "narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship." *In re Piercy*, 2019 WL 3943668, at *11 (quoting *Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 532 (Bankr. S.D. Ohio 2008)); s*ee also In re Bucci*, 493 F.3d 635, 640 (6th Cir. 2007) ("[I]t is clear in this circuit that a statute may create a trust for purposes of § 523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing."); *Ellsworth v. Carmichael (In re Carmichael)*, No. 18-50024 MPP, Adv. No. 18-5010 MPP, 2018 WL 4201750, at *8 (Bankr. E.D. Tenn. Aug. 14, 2018) ("The fiduciary relationship required by this provision is narrower than in some contexts; an express or technical trust relationship is required.").

The Chancery Court judgment does not support a finding that there was an express or technical trust sufficient to prove that the parties were in the type of fiduciary relationship required to proceed under the defalcation prong of section 523(a)(4) as defined by the Sixth Circuit.

Accordingly, the Court will deny Ms. Robinson's motion for summary judgment for nondischargeability under section 523(a)(4).

Given the Court's analysis above, the Court is inclined to grant summary judgment to Dr. Thompson on the section 523(a)(4) claim despite the fact that he has not moved for summary judgment. Federal Rule of Civil Procedure 56(f) provides that, "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f); Fed. R. Bankr. P. 7056. As to the section 523(a)(4) claim only, the Court is inclined to grant Dr. Thompson summary judgment and dismiss that claim. In keeping with the requirements of Rule 56(f), the Court will postpone the trial scheduled for April 20, 2020, as well as all trial related deadlines, and will give Ms. Robinson until April 24, 2020, in which to file a responsive brief if she wishes to proceed to trial on her section 523(a)(4) claim.

### D. Section 523(a)(6)

Finally, Ms. Robinson contends that the debt owed to her by Dr. Thompson is nondischargeable under 11 U.S.C. § 523(a)(6). [Doc. No. 39, at 22]. Section 523(a)(6) provides that a debt that is *both* willful *and* malicious is nondischargeable. *See* 11 U.S.C. § 523(a)(6). "[T]he judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463 (6th Cir. 1999). The elements of a claim under section 523(a)(6) are that: "(1) the debtor's conduct was willful and malicious, (2) [the creditor] suffered an invasion of [its] legal rights or to the legal rights to [its] property, and (3) the invasion was caused by the debtor's conduct." *Nat'l Sign and Signal v. Livingston,* 422 B.R. 645, 653 (W.D. Mich. 2009) (citing *CMEA Title Agency, Inc. v. Little (In re Little),* 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005)). A creditor bears the burden of demonstrating a claim under section 523(a)(6) by a preponderance of the evidence. *See Steier v. Best (In re Best),*

109 F. App'x. 1, 4 (6th Cir. 2004). Such exceptions to discharge are "strictly construed against creditors." *Id.* However, once a creditor establishes a prima facie case, "the burden shifts to the [debtor] to present credible evidence that a defense to the liability exists." *JP Morgan Chase Bank, N.A. v. Zwosta (In re Zwosta),* 395 B.R. 378, 382 (B.A.P. 6th Cir. 2008).

The U.S. Supreme Court has addressed the meaning of "willful" within the context of section 523(a)(6). *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). As summarized by the Sixth Circuit:

> The Court held that "willful" means "voluntary," "intentional," or "deliberate." As such, only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury. The Court explained its holding by discussing the importance of context:
>
> > The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*In re Markowitz,* 190 F.3d at 464 (quoting *Geiger,* 523 U.S. at 61–62, 118 S. Ct. at 977) (internal citations omitted).

Following the lead of the Supreme Court in *Geiger,* the Sixth Circuit held that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* Further, "'[t]o find that a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act, it is necessary to look into the debtor's mind, subjectively.'" *Gabel v. Olson (In re Olson),* 355 B.R.

26

660, 665 (Bankr. E.D. Tenn. 2006) (quoting *Monsanto Co. v. Wood (In re Wood),* 309 B.R. 745,

753 (Bankr. W.D. Tenn. 2004)).

Proof of willful behavior must often be demonstrated through the use of circumstantial

evidence. *See In re Jones,* 276 B.R. at 802. The bankruptcy court in *In re Jones* noted that "willful"

behavior can "be indirectly established by the creditor demonstrating the existence of two facts:

(1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would

cause injury to those rights." *Id.* As another bankruptcy court in this Circuit has observed, "[t]he

willfulness element is designed to separate negligent or inadvertent acts from deliberate and

intentional ones, and to ensure that the conduct in question falls within the ambit of an intentional

tort." *W. Michigan Cmty. Bank v. Wierenga (In re Wierenga),* 431 B.R. 180, 185 (Bankr. W.D.

Mich. 2010).

A malicious injury occurs "when a person acts in conscious disregard of [his] duties or

without just cause or excuse." *In re Jones,* 276 B.R. at 803 (citing *Gonzalez v. Moffitt (In re*

*Moffitt),* 254 B.R. 389, 396 (Bankr. N.D. Ohio 2000)). A finding of maliciousness does not require

a determination of ill-will or specific intent. *See Monsanto Co. v. Trantham (In re Trantham),* 304

B.R. 298, 308 (B.A.P. 6th Cir. 2004). In addition, "malice does not require any ill will or specific

intent to do harm, only to do an act without just cause or excuse, but that is beyond negligence or

recklessness." *In re Wierenga,* 431 B.R. at 185. The Sixth Circuit has also cautioned that:

> the injury must invade the creditor's legal rights. Section 523(a)(6)'s term "willful
> . . . means a deliberate or intentional invasion of the legal rights of another, because
> the word 'injury' usually connotes legal injury *(injuria)* in the technical sense, not
> simply harm to a person." The conduct "must be more culpable than that which is
> in reckless disregard of creditors' economic interests and expectancies, as
> distinguished from . . . legal rights. Moreover, knowledge that legal rights are being
> violated is insufficient to establish malice . . . .

*In re Best,* 109 F. App'x at 6 (internal quotations and citations omitted).

In this case, Ms. Robinson's state court countercomplaint plead "fraud/misrepresentation" and conversion. [Doc. No. 41-3, at 16-17]. The Court has previously addressed the fraud and intentional misrepresentations aspects of Dr. Thompson's conduct as they relate to Ms. Robinson's section 523(a)(2)(A) claim. Courts have observed that allegations stating a claim for relief under section 523(a)(2)(A) may also state a claim for relief under section 523(a)(6). *Woodbourne Invs., LLC v. Boyd (In re Boyd)*, No. 17-50593 MPP, 2019 WL 948347, at *11 (Bankr. E.D. Tenn. Feb. 22, 2019) (citing *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) ("[T]he provisions of § 523(a)(2)(A) and § 523(a)(6) are not mutually exclusive") (collecting cases)). The additional requirement of malice under section 523(a)(6) means substantially the same thing under the Bankruptcy Code as it does under Tennessee law. *See In re Thomas*, No. 16-00260-K, 2018 WL 6990593, at *5 (Bankr. W.D. Tenn. Oct. 18, 2018) ("If there is a difference in the meaning of malice in Tennessee and the Bankruptcy Code, it is far too subtle for this Court to find.").

As for conversion, it is defined under Tennessee law as "the appropriation of tangible property to a party's own use and benefit in exclusion or defiance of the owner's rights." *Thompson v. Thompson,* No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009). Mere proof of conversion is not sufficient to satisfy the requirements of section 523(a)(6). *See In re Jones*, 276 B.R. at 801. "[W]hile they do appreciably overlap, liability for conversion does not automatically equate with the existence of a nondischargeable debt under § 523(a)(6)." *Superior Metal Prods. v. Martin (In re Martin),* 321 B.R. 437, 441 (Bankr. N.D. Ohio 2004). Whether an act of conversion constitutes a willful and malicious injury within the scope of section 523(a)(6) depends upon whether the party intended to cause the harm or was substantially certain that such harm would occur. *Sweeney v. Lombardi (In re Lombardi),* 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

Dr. Thompson argues that the Chancery Court made "inadequate" findings that he acted maliciously. [Doc. No. 44-1, at 7]. The Court disagrees and concludes that the Chancery Court's findings are more than adequate to support a finding of willful and malicious injury under section 523(a)(6). Dr. Thompson's argument again focuses on the Chancery Court's legal conclusion in isolation from the rest of the court's findings. A review of those findings shows that the Chancery Court repeatedly referenced the intentional, willful, and malicious nature of Dr. Thompson's conduct. In awarding punitive damages, the Chancery Court specifically found that Dr. Thompson "acted intentionally, fraudulently, and maliciously to induce Ms. Robinson to remain at TWC and to both build and manage a highly successful pain management practice based on an agreement that [she] would share equally with [him] the net profits of TWC, with no intent to follow through with that agreement." [Doc. No. 41-1, at 11]. The Chancery Court clearly found that, given the extent of Dr. Thompson's fraud and misconduct, his conduct was purposefully designed to deprive Ms. Robinson of money and property rightfully due to her. Dr. Thompson was aware of Ms. Robinson's right, per their agreement, to one half of the net proceeds of the business plus salary and benefits and knew that his conduct would cause injury to those rights. *See In re Jones,* 276 B.R. at 802. The Chancery Court found that Dr. Thompson's actions were "motivated solely by greed." [Doc. No. 41-1, at 11]. Indeed, Dr. Thompson has never provided an innocent justification for his actions.

Based on the Chancery Court's specific findings of fact and conclusions of law as stated above, the Court concludes that the doctrine of collateral estoppel establishes that the debt owed by Dr. Thompson to Ms. Robinson is also nondischargeable under section 523(a)(6). Ms. Robinson has met her burden to prove that there is no genuine dispute as to a material fact and that she is entitled to judgment as a matter of law with respect to section 523(a)(6).

## VI.     Conclusion

For the reasons stated above, the Court finds that there is no genuine dispute as to any material fact and that Ms. Robinson is entitled to judgment as a matter of law on her claims that the debt owed to her by Dr. Thompson is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The Court finds, however, that Ms. Robinson is not entitled to summary judgment with respect to her claims under 11 U.S.C. § 523(a)(4). Although Dr. Thompson has not moved for summary judgment, based on the Court's analysis above, the Court is inclined to enter summary judgment in favor of Dr. Thompson on Ms. Robinson's section 523(a)(4) claim pursuant to Federal Rule of Civil Procedure 56(f) and Federal Rule of Bankruptcy Procedure 7056. In addition to the reasons stated above and having determined that the debt owed by Dr. Thompson is nondischargeable, the Court does not ascertain that it can grant Ms. Robinson any greater relief than is granted herein. Accordingly, the Court hereby postpones the trial scheduled for April 20, 2020, as well as all trial-related deadlines. The Court will give Ms. Robinson until April 24, 2020, in which to file a responsive brief if she wishes to proceed to trial on her section 523(a)(4) claim. If no response is filed, the Court will dismiss the section 523(a)(4) claim and close this adversary proceeding.

A separate order and judgment will enter.

# # #